<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ELENA ZSOLDOS, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 3:16-cv-2711-BRM-TJB |
| TOWNSHIP OF MANCHESTER, | : | **OPINION** |
| Defendant. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Township of Manchester's (the "Township") Motion to Dismiss Counts III [unjust enrichment] and IV [New Jersey Law Against Discrimination] of Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) Plaintiff Elena Zsoldos ("Zsoldos") opposes this motion. (ECF No. 10.) Upon reviewing the papers submitted by counsel, for the reasons set forth below and for good cause having been shown, the Township's motion is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND**

**A. Procedural History**

On March 29, 2016, Zsoldos filed a complaint in the Superior Court of New Jersey, Law Division (Dkt. No. OCE-L-870-16). On May 12, 2016, the Township filed a Notice of Removal to the United States District Court for the District of New Jersey. (ECF No. 1.) On June 9, 2016, prior to filing its answer, the Township filed this Motion to Dismiss Counts III and IV of Plaintiff's Complaint for failure to state a claim. (ECF No. 7.)

**B. Factual History**

The following accepts as true Zsoldos's factual allegations from the Complaint (ECF No. 1-1) and draws all inferences in the light most favorable to Zsoldos. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Zsoldos was employed by the Township from approximately June 2008 until her termination in May 2014. (ECF No. 1-1 at ¶¶ 6, 11.) On or about April 28, 2014, Zsoldos was charged with possession of a controlled substance under N.J.S.A. 2C:35-10a(1) in Asbury Park City, New Jersey. (*Id.* at ¶ 7.) On April 29, 2014, the Township notified Zsoldos by letter sent via regular U.S. mail that she was being suspended without pay and could request a hearing within five (5) days of receipt of the letter. (*Id.* at ¶ 9.) On May 6, 2014, the Township notified Zsoldos her employment was terminated effective immediately. (*Id.* at ¶ 11.) However, Zsoldos did not receive the Township's suspension letter until May 2, 2014, and she responded by electronic and certified mail on May 7, 2014, wherein she requested a hearing and "notified the Township that she would be enrolled in an inpatient treatment facility for up to 10 days from the date of the May 7, 2014 letter and requested that the hearing be scheduled for some time after the expiration of the 10 day period." (*Id.* at ¶ 12.) Zsoldos further authorized the Township to communicate with her husband during her time in treatment. (*Id.*)

On May 9, 2014, the same day Zsoldos was scheduled to appear in at the Asbury Park Municipal Court for her criminal case, Zsoldos's husband emailed the Township to notify it that Zsoldos's inpatient program was extended. (*Id.* at ¶¶ 8, 14.) Consequently, Zsoldos's husband requested the hearing be postponed until Zsoldos was released from the treatment facility. (*Id.* at ¶ 14.) The Township responded to Zsoldos's husband by notifying him that the Township was scheduled to hold a closed session on May 12, 2014 to discuss Zsoldos's request for a hearing. (*Id.*

at ¶ 15.) However, "[n]o further response was ever received from the Township with respect to [Zsoldos's] request for a hearing, the Township never held or scheduled a hearing, and [Zsoldos] was never notified that a hearing was held or scheduled." (*Id.* at ¶ 16.)

Zsoldos ultimately pled guilty to wandering in a drug zone under N.J.S.A. 2C:33-2.1. (*Id.* at ¶ 18.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DECISION

### A. Unjust Enrichment (Count Three)

Zsoldos asserts a claim for unjust enrichment alleging "Zsoldos rendered services to the Township," the Township "accepted these services and in turn failed to abide by the terms set forth in the Employment Agreement," and therefore the Township was "unjustly enriched at the expense of [Zsoldos]." (ECF No. 1-1 at ¶¶ 32-34.)

The Township argues Zsoldos may not maintain a cause of action for unjust enrichment where an express contract governing the disputed issues exists. The Court agrees.

To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). "Recovery for unjust enrichment, however, is an equitable remedy that is only available when there is no express contract providing for remuneration." *Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, Civ. A. No. 11-1279 MLC, 2011 WL 3022243, at *8 (D.N.J. July 22, 2011) (citing *Caputo v. Nice–Pak Prods.*, 300 N.J. Super. 498, 507 (App. Div. 1997)). An unjust enrichment claim is its own breach of contract claim, separate and independent from the breach of an express contract, and therefore must be plead as such. *Id.* (citing *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06–5814, 2007 WL 1756027, at *9 (D.N.J. June 18, 2007)).

Here, Zsoldos's claim for unjust enrichment is based on, as stated in the Complaint, the Township's "fail[ure] to abide by the terms set forth in the Employment Agreement." (ECF No.

4

1-1 at ¶ 33.) Although Zsoldos argues that the Township's motion to dismiss this count is premature because Federal Rule of Civil Procedure 8(d) permits them to plead in the alternative, the language in the Complaint itself requires the Court to dismiss the cause of action. A claim for unjust enrichment must be separate and independent of a claim for breach of an express contract, and the Complaint indicates they are one and the same.

Accordingly, the Township's motion to dismiss is **GRANTED** as to Count Three.

**B. New Jersey Law Against Discrimination (Count Four)**

To state a cause of action under the New Jersey Law Against Discrimination ("NJLAD"), a plaintiff must show: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006).

The Township argues Zsoldos cannot show she was disabled, cannot show the Township knew she was disabled (assuming she can prove the existence of a disability), and cannot show she timely requested an accommodation.

    1. <u>Whether Zsoldos Was Disabled Under The NJLAD</u>

The Township argues Zsoldos was not disabled at the time of her arrest and resulting suspension because she was currently engaging in the use of drugs, which disqualifies her from being considered disabled. (ECF No. 7-1 at 6.) Zsoldos argues that "currently engaging" is not a bright-line test, is a factual inquiry, and therefore cannot be determined on a motion to dismiss. (ECF No. 10 at 7-8.)

The American with Disabilities Act provides New Jersey courts with guidance as to the definition of a qualified disability under the NJLAD. *See Bosshard v. Hackensack Univ. Med.*

*Center*, 345 N.J. Super. 78, 85 (App. Div. 2001). With respect to illegal use of drugs and alcohol, the ADA advises:

> (a) Qualified individual with a disability
> For purposes of this subchapter, a qualified individual with a disability shall not include any employee or applicant who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use.
>
> (b) Rules of construction
> Nothing in subsection (a) of this section shall be construed to exclude as a qualified individual with a disability an individual who--
> (1) has successfully completed a supervised drug rehabilitation program and is no longer engaging in the illegal use of drugs, or has otherwise been rehabilitated successfully and is no longer engaging in such use;
> (2) is participating in a supervised rehabilitation program and is no longer engaging in such use; or
> (3) is erroneously regarded as engaging in such use, but is not engaging in such use;
>
> except that it shall not be a violation of this chapter for a covered entity to adopt or administer reasonable policies or procedures, including but not limited to drug testing, designed to ensure that an individual described in paragraph (1) or (2) is no longer engaging in the illegal use of drugs.

42 U.S.C. § 12114.

There is no dispute that a person "currently engaging in the illegal use of drugs" is not disabled. (ECF Nos. 7-1 at 6, 10 at 7.) However, Zsoldos argues:

> Interpretive guidance on Title I of the ADA clarifies the term "currently engaging" but does not create a bright line rule:
> > The term "currently engaging" is not intended to be limited to the use of drugs on the day of, or within a matter of days of weeks before, the employment action in question. Rather, the provision is intended to apply to the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct.

6

(ECF No. 7 (quoting 29 C.F.R. Pt. 1630, app. § 1630.3(a)-(c)).) In other words, Zsoldos argues that the Township's motion is premature because the Court cannot yet make a determination as to whether Zsoldos was "currently engaging in the illegal use of drugs" and therefore whether she was disabled.

Contrary to Zsoldos's argument, the regulations cited do not support denying the Township's motion. The regulation instructs courts to interpret "currently engaging" broadly rather than narrowly. 29 C.F.R. Pt. 1630, app. § 1630.3(a)-(c) (stating that the term "is not intended to be limited"). A narrow interpretation would limit the definition to "the use of drugs on the day of, or within a matter of days of weeks before, the employment action in question," whereas a broad interpretation, which Zsoldos appears to support, permits the Court to consider "the illegal use of drugs that has occurred recently enough to indicate that the individual is actively engaged in such conduct." *Id.*

Nevertheless, Zsoldos argues the Township "cannot prove, nor does [Zsoldos] admit, that [Zsoldos] was 'currently engaging' in the use of illegal drugs. Therefore, a question of facts exists which would benefit from discovery and which cannot be prematurely extinguished." (ECF No. 10 at 7-8.) The Township argues "it is not disputed [Zsoldos] was arrested for possession of cocaine . . . while driving a Township vehicle and while on paid working time." (ECF No. 7-1 at 7.) The Township further argues it is undisputed Zsoldos subsequently entered a treatment program, leading to the conclusion she was currently using drugs at the time of her arrest.

The question is whether Zsoldos's arrest is sufficient to find she was "currently engaging in the illegal use of drugs" and therefore disqualified from being considered disabled under the NJLAD. Accepting as true all factual allegations in favor of Zsoldos as required at this stage in the

7

litigation, the Court cannot make a determination as to whether Zsoldos was currently engaged in the illegal use of drugs and consequently whether she was disabled.[1]

    2. <u>Whether The Township Knew Zsoldos Was Disabled And Whether Zsoldos Timely Requested An Accommodation</u>

Assuming Zsoldos can prove she was disabled, the Township argues Zsoldos cannot show it knew she was disabled or that she timely requested an accommodation:

> [Zsoldos] has made no allegations that the Township was either aware of her cocaine use or that she had requested any type of assistance or accommodation related to her use of cocaine. Specifically, there are no allegations contained in the Complaint which would support a showing that the Township was even aware of [Zsoldos's] alleged use of cocaine prior to her arrest, suspension and termination as is required for a prima facie case of failure to accommodate.

(ECF No. 7-1 at 8-9.) The Township further argues Zsoldos did not request an accommodation until May 7, 2014, which was after she was terminated, and any issue with the timing of her termination notice is irrelevant because "an employee is required to show that the employer knew of the alleged disability as part of her prima facie case." (ECF No. 11 at 5.)

Zsoldos argues the Township "fail[ed] to provide an accommodation after being notified of [Zsoldos's] enrollment in an inpatient treatment facility" and that this claim is "intertwined with [Zsoldos's] due process claim in that [Zsoldos's] request came within the five (5) day time frame in which [Zsoldos] could request a hearing." (ECF No. 10 at 8.)

The Court agrees; the NJLAD claim is intertwined with the notice claim. Based on the Complaint, Zsoldos made the Township aware of her enrollment in a treatment facility and requested a hearing and postponement within the timeframe set forth in the suspension letter.

---

[1] The Court notes the circumstantial evidences before it (i.e. arrest followed by treatment) indicates Zsoldos was likely currently engaged in illegal drug use, but is bound by the legal standard of a motion to dismiss.

8

Zsoldos should not be penalized for what is alleged to be the Township's mistake in sending the termination letter prematurely. Therefore, for the purpose of this motion, Plaintiff has sufficiently alleged the Township knew of Zsoldos's disability and that an accommodation was timely requested.

Accordingly, the Township's motion to dismiss is **DENIED** as to Count Four.

### IV. CONCLUSION

For the reasons set forth above, the Township's motion is **GRANTED in part** and **DENIED in part.**

*/s/ Brian R. Martinotti*
**BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  January 9, 2017